· JULIA SMITH v. THE STATE.

No. 6308.   Decided February 1, 1922.

### 1.—Murder—Juvenile—Principal—Accomplice—Requested   Charge — Punishment.

Where defendant was tried as an accomplice for murder, and it developed on the trial that her principal, who was her own daughter, was just over thirteen years of age, when the offense was committed, and the defendant raised the question that there could be no accomplice without a principal liable to punishment, inasmuch as the alleged principal was under 18 years of age, and not subject to punishment under the juvenile law, *held:* that this contention of defendant is untenable, and the court properly declined to submit defendant's special charge that if said principal was a juvenile she could not be a principal.

### 2.—Same—Confessions—Guilt of Principal—Accomplice.

Where the alleged principal refused to testify to any statement which would incriminate the defendant, there was no error in permitting the State to introduce her confession to establish her guilt as a principal.

### 3.—Same—Voluntary Confessions—Rule Stated—Response to Questions.

The fact that the alleged principal may have been told that it would be better for her to tell it, does not render the confession inadmissible, though the statement may have been made in response to questions; and the fact that interwoven in the confession were expressions connecting the defendant with the acts of the principal would not render the statement unavailable to the State.  Following Walker v. State, 88 Texas Crim. Rep., 389.

**4.—Same—Requested Charge—Limiting Confession—Defendant's Acts.**

Ordinarily this court would think that the charge given by the court limiting the confessions of the principal sufficient to protect same, yet, on account of the peculiar wording of the confession interweaving defendant's acts and directions with those of the confessor, the more specific instruction in the requested charge should have been given.

**5.—Same—Requested Charge—Accomplice—Principal—Death of Infant.**

Where the essence of the crime charged against the accused was that she advised, commanded, or encouraged her daughter to kill her infant by throwing it in the water and drowning it, and there was testimony that the child may have been dead, or that defendant believed it dead, and that she thought that the body of the infant thrown in the water was dead at the time, she could not be guilty as an accomplice in murder by drowning, and the court should have so instructed the jury as requested by defendant's special instruction, and the failure to do so was reversible error.

**6.—Same—Corpus Delicti—Practice on Appeal—Confession—Practice on Appeal.**

The judgment being reversed and the cause remanded on other grounds, the question of the exclusion of the confession and the *corpus delicti* need not be discussed.

Appeal from the District Court of Williamson.  Tried below before the Honorable James R. Hamilton.

Appeal from a conviction of murder as an accomplice; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Warren W. Moore,* for appellant.—On question of juvenile statutes:  Moore v. State, 40 S. W. Rep., 287.

On question of confession, and requested charge:  Puryear v. State, 11 S. W. Rep., 929; Wallace v. State, 10 Texas Crim. App., 265.

*R. H. Hamilton,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Conviction is for murder.  Penalty, five years in the penitentiary.

Omitting formal parts, the second count in the indictment (and the only one submitted to the jury) alleges, that  Eliza Smith killed an infant female child of Julia Smith by throwing it in the water and drowning it; and that before the commission of the offense by Eliza Smith, Julia Smith advised, commanded and encouraged Eliza Smith to commit the said offense, Julia Smith not being present when the offense was committed.

It developed on the trial that Eliza Smith was just over thirteen years of age when the offense was committed.  She was the daughter of appellant, and lived with her.  The infant was a bastard child.  Appellant raises the question that there can be no accomplice without a principal liable to punishment, and as Eliza Smith, being under eighteen years of age, is not subject to punishment under the "Juve-

nile Law" (Art. 1197, Complete Texas Statutes, 1920, Acts 1918, Fourth Called Session, Chapter 26, Section 1), therefore she could not be a principal, and that it necessarily follows that appellant could not be an accomplice. The deduction would be correct if the premise was sound, but to the latter we cannot agree. In support of his proposition we are referred to Willingham v. State, 33 Texas Crim. Rep., 98, and Moore v. State, 37 Texas Crim. Rep., 552, 40 S. W. Rep., 287. In those cases this court was dealing with the offense of abortion, and held that the pregnant woman was guilty of no offense and hence could not be a principal. That is not the law as to a "juvenile." If the averments of the State be true, Eliza Smith committed a criminal act. The manner of punishment depended on the option of her parent, guardian, attorney or next friend, or of the juvenile herself. Slade v. State, 85 Texas Crim. Rep., 358, 212 S. W. Rep., 661. If the affidavit required (Art. 1197, C. C. P.) be not presented to the court she could be punished as a felon. If presented, and found to be a juvenile, the prosecution for a felony must be dismissed; but she is proceeded against and punished as a "delinquent." The proof of the same criminal act either denounces her as a felon or a "delinquent." The punishment is different; but no particular punishment is necessary to render one a principal. That the proceeding against a juvenile even as a delinquent is regarded as a criminal action is shown by the latter part of Article 1197, *supra,* which reads:

"A prosecution and conviction of a juvenile shall be regarded as a criminal, or a misdemeanor case, and an appeal lies from such conviction directly to the Court of Criminal Appeals of Texas."

If appellant's contention should be sustained we would then have this anomalous condition: A is indicted as an accomplice to murder, with B a juvenile, named as the principal. If B or his friends elected to be prosecuted as a felon, then the prosecution against A as an accomplice could proceed; but if B or his friends elected to be prosecuted as a delinquent, the prosecution against A must fail. In other words, the question of "principal" would be determined not by the law, but by the option of the one charged as a principal. The statement of the proposition seems to carry with it its own refutation. From what has been said it follows that we believe the court properly declined to give appellant's special charge No. 2, to the effect that if Eliza Smith was a juvenile she could not be a principal.

The State placed Eliza Smith upon the witness stand, and she testified that appellant was her mother, but refused to answer any questions or make any statement which would criminate appellant. The State then offered the confession of Eliza Smith to establish her guilt as a principal. As a predicate therefor the county attorney, H. N. Graves, testified, that he gave her the warning contained in the confession and then wrote the same, and read it over to her in the presence of two or three parties; that she signed it voluntarily, without any inducement or coercion from him, or anybody with him. Some por-

tions of the confession were eliminated, that part read to the jury being as follows:

"Hutto, Texas, February 2, 1920.

"I, Eliza Smith, being warned by H. N. Graves that I do not have to make any statement at all about the drowning of a baby, and what I do tell can be used against me and not for me on my trial for such murder, freely and voluntarily tell the following to H. N. Graves, the person warning me: On last Tuesday night mamma was sick and she sent me for Aunt Harriet Strawn. She was sick and I went after her and Aunt Harriet came and I went on into my room and went to sleep. The next day after Aunt Harriet came mamma sent Ollie for Dr. Flinn. The night before that mamma told me to go into her room and look under the bed ticking under the quilt and get that bundle. I got the bundle, it was wrapped up in a towel and an underskirt of my mother's, an old piece of one, with a green border on it. I took this baby, and after I left the house I heard it make a little noise like a baby grunted. I had this bundle by my side. I took it down to the creek close to the Water & Light Plant in Hutto and threw it in on the south side of the bridge and it went under and made no sound. I think it was a baby and I thought it was alive, but don't know for sure.

Eliza D. Smith."

After the confession was read to the jury H. N. Graves was recalled by the defendant and further examined with reference to the taking of the same, and testified with reference thereto as follows:

"It is a fact that she first denied all the matters set up in there. Regarding what the facts are with reference to she and Sheriff Allen going to a door or out of a door or starting to go out of the door after she had denied a knowledge of these matters, will say that she denied it for a while and finally Mr. Allen and some one else, I think Dr. Flinn, some one, took her to the door, right outside of the door, we could see her, and said something to her just a moment, and Mr. Allen says, 'She will tell you about it now.' I think what was said to her was that it would be better for her to tell, that the best thing was to tell all about it. The information was elicited by questioning. I would ask her and she would answer my question, and then when I got through I got a piece of paper from Dr. Flinn and wrote it out and read it to her. It was originally elicited by questions and answers. I think it was Dr. Flinn with Mr. Allen, and they both stated to her the best thing for her to do was to tell it. There were four or five or six people present at the time, it was in Dr. Flinn's office. On cross-examination by the defendant, witness stated: Here is what was said: 'The best thing to do was to tell the truth about it, to tell all about it.' As to whether I now say both were said, well, I don't remember; that is what I call to mind, it was so rapid, she immediately came back."

After the re-examination of the witness Graves, appellant moved the court to withdraw the confession on the ground that it was not voluntarily made, and was made in response to questions. Sheriff Allen was not interrogated on this point; neither did Eliza Smith make any issue that the statement had been induced by promises or threats. The fact that she may have been told that it would be better for her to tell it does not render the confession inadmissible. Thomas v. State, 35 Texas Crim. Rep., 178; Anderson v. State, 54 S. W. Rep., 579, and cases therein cited; Grimsinger v. State, 69 S. W. Rep., 583. Though the statement may have been made in response to questions, this would not vitiate it. Greer v. State, 45 S. W. Rep., 12; Tidwell v. State, 47 S. W. Rep., 466; Carmichael v. State, 54 S. W. Rep., 904.

Objection was urged to the following portions of the confession, and motion made to strike them out: "On last Tuesday night mamma was sick and she sent me for Aunt Harriet Strawn;" also, "she was sick and I went after her and Aunt Harriet came and I went on into my room and went to sleep;" also, "Mamma sent Ollie for Dr. Flinn. The night before that mamma told me to go into her room and look under the bed ticking under the quilt and get that bundle."

The objections urged were that the statements did not tend to establish the guilt of Eliza Smith, and that it was a statement corroborative of other witnesses, and tended only to establish the guilt of appellant.

Eliminating any one or all of the statements complained of would render the confession incomplete and fragmentary, either as to the time when the girl removed the infant, or make less intelligible her connection with it. The confession could be used to fix the principal's guilt, and all of it necessary to connect her in an orderly way with the transaction was properly admitted. Simms v. State, 10 Texas Crim. App., 131; Bluman v. State, 33 Texas Crim. Rep., 43, 21 S. W. Rep., 1027; Milner v. State, 72 Texas Crim. Rep., 45, 169 S. W. Rep., 899. The fact that interwoven in the confession were expressions connecting appellant with the acts of the principal would not render the statement non-available to the State. The same would be true though the statement tended to corroborate the testimony of some witness. These hurtful matters must be controlled by proper instructions to the jury limiting the purpose of the confession to establishing the principal's guilt. The trial court should carefully guard the rights of the accomplice on trial in this respect. Statements in the confession which might relate solely to the guilt of the accomplice, and which throw no light on the principal's actions should be excluded. The record shows that parts of the confession were not admitted, but the portions eliminated are not before us. The same principle would apply to "interwoven" portions of the statement as was discussed in Walker v. State, 88 Texas Crim. Rep., 389, 227 S. W. Rep., 308, relating to dying declarations.

Complaint is made of the failure to give the following special charge: "You are instructed that you must not consider any part of the alleged declaration by Eliza Smith introduced in evidence by the State in determining either that Julia Smith advised, commanded or encouraged Eliza Smith to throw the baby described in the indictment into the creek, or that Julia Smith knew that the baby described in the indictment was alive when thrown in the creek, even though you believe beyond a reasonable doubt that Julia Smith advised, commanded and encouraged Eliza Smith to throw the baby in the creek."

The trial court had already instructed the jury limiting the purpose for which they might consider the confession of Eliza Smith, and doubtless believed it unnecessary to charge more specifically upon that issue. The court's charge was in the following language:

"In regard to the alleged declaration of Eliza Smith introduced in evidence by the State in this case, the jury are instructed that they shall not consider as evidence in this case any statement or declaration of said Eliza Smith, if any, contained in said alleged declaration for any purpose, if you do consider the same, except to aid you in determining the guilt of Eliza Smith of the offense of murder by drowning the deceased, as charged in the second count of the indictment; and you must not, in any event, consider any of said alleged declarations and statements of said Eliza Smith as affecting the guilt of the defendant, Julia Smith, of the murder charged against her in this case."

Ordinarily we would think the charge given by the court sufficient to protect appellant, but on account of the peculiar wording of the confession interweaving appellant's acts and directions with those of the confessor, the more specific instruction in the special charge was not inappropriate. In appraising the force of the evidence against accused even the trained legal mind experiences difficulty in discharging the confession, and finds it constantly recurring to those recitals which point to the guilt of accused. If this is true with those taught and trained to discriminate, how much more difficult for the ordinary juror, lacking in such legal training? The trial court should not omit any pertinent instruction in an effort to fully protect one on trial from an improper use by the jury of legitimate testimony for one purpose, but exceedingly hurtful if applied by them to others.

The following special charge was requested and refused:

"You are instructed that although you may believe from the evidence beyond a reasonable doubt that Eliza Smith is guilty of murder as charged in the second count of the indictment, before you can convict the defendant, Julia Smith, as an accomplice under the second count of the indictment, you must find from the evidence, beyond a reasonable doubt, that the defendant, Julia Smith, before the commission of said offense by Eliza Smith, did wilfully and with her malice aforethought, advise, command or encourage the said Eliza Smith to throw said child in the water and at the time the defendant

advised, commanded or encouraged, if you believe she did advise, command or encourage, the throwing in the water of said child, the defendant knew that said child was then and there living, or if you have a reasonable doubt as to this you will acquit the defendant and say by your verdict not guilty."

The essence of the crime charged against accused was that she advised, commanded or encouraged Eliza Smith to kill the infant by throwing it in the water and drowning it. If the child was dead, or if in fact it was alive, but appellant believed it dead, and she directed Eliza Smith to throw in the water what appellant thought was the lifeless body of the infant she would not be guilty as an accomplice to murder by drowning, even though Eliza Smith while carrying out the directions discovered the child was still living. If, previous to giving such directions, appellant had caused the child's death by suffocation or strangulation she would be a principal in the killing however committed, but could not be convicted as an accomplice to the death by drowning. Unless we violate every known rule of law we must, in ascertaining appellant's guilt, discard the confession, and when that is done all the issues suggested above, and others as well, are raised by the testimony.

Julia Smith was a negro woman who had borne several children. That she gave birth to an illegitimate child on the 29th or 30th of January, 1920, is proven beyond question. That she was anticipating it, and made arrangements with Aunt Harriet Strawn, an old colored woman, to be present and wait on her is also shown. When Aunt Harriet arrived the afterbirth and other evidences of childbirth were discovered, but the baby was nowhere to be seen, and appellant even denied she had given birth to a baby. The next morning she told another colored woman she didn't have any baby, that she had told Eliza to take "that thing" and throw it in the creek. On February 2d the body of an infant was found in the creek about five or six hundred yards from appellant's house. Outside of the confession of Eliza Smith this child is not identified as appellant's, except by a partial and unsatisfactory identification of a skirt in which it was wrapped as being like one appellant owned. The baby's body was dressed for burial by Alice Mercer, a State's witness. She said: "It had a cord; it was wrapped and wrapped around the neck, plumb around, because I unwrapped it off the baby. . . . The cord was still wrapped around its neck, and I unwrapped the cord when I washed and dressed the baby. . . . This cord was wrapped tightly around its neck; it was just wrapped and wrapped and wrapped." Was the condition of the cord around the neck an incident of the birth, or was it designedly so placed? If by design, then who did it? Appellant evidently wished to do away with the baby. Had she wrapped the cord around its neck to cause strangulation? Was it strangled? If not, did she think it had been? One of the doctors testified: "If the baby was found with that umbilical cord wrapped and wrapped tightly around

its neck, it might meet its death that way." The evidence further shows that when the body was found it was wrapped in a bath towel with a skirt on top of that, and the bundle compactly done up and tied so tightly that the parties who discovered it were unable to untie it, but had to cut the wrappings to find what was inside. Who tied the bundle up? Did appellant wrap and tie the baby up in such a way, designing to smother it? Was it smothered? If not, did appellant think it had been? The baby was buried on February 2d; was exhumed on the 3d, and a post mortem examination made, with only the lung test applied. Air and fluid was found in the lungs. The physicians gave it as their opinion that the baby had lived, and came to its death by drowning. However, they were unable to say whether the fluid in the lungs was water or amniotic fluid. They agreed that after the child was partially expelled in birth it would have taken air into the lungs, and that it was not usual, but possible, for its face to have been submerged in the amniotic fluid, and some of it taken into the lungs, and if this had occurred exactly the same conditions would have been apparent in the lungs as they found. The physicians agreed that they were instructed to make the "lung test" only, and that there were other tests to which they did not resort which would have enabled them to speak with much more positiveness as to the cause of death. All of the advanced works on Medical Jurisprudence announce the tests from which it may be determined with much more reasonable certainty whether death resulted from strangulation, suffocation or drowning. The count upon which the case went to the jury charged that appellant with malice aforethought advised Eliza Smith to kill the infant by drowning it. In order to support the charge that appellant was actuated by "malice aforethought," it must appear that with an evil design to compass the death of the infant she did with a sedate and deliberate mind and formed design to kill, advise Eliza Smith to drown it. If she believed it was already dead from other means used by her when she directed that it be thrown in the water, the malice or evil design in so far as she was moved thereby had already expended itself, and the direction to throw it in the water was not with a malicious design to kill, but to destroy evidence and hide the result of a crime which she believed had already been accomplished.

As to appellant the case being one of circumstantial evidence all of the foregoing matters were subjects for exploration, and the discussion already has shown our reason for believing the special requested instruction last referred to should have been given. ·

Appellant urges that, excluding the confession, the *corpus delicti* is not sufficiently proven as to her. We do not discuss the question further than as adverted to heretofore. This much may be said: when the confession is discarded, the evidence is unsatisfactory. It may be different upon another trial.

For the errors discussed the judgment of the trial court must be reversed and the cause remanded for a new trial. ·

*Reversed and remanded.*