ALBERT WESLEY, JR., V. THE STATE.

No. 21276. Delivered December 4, 1940.
Rehearing Denied February 12, 1941.
Appealed to United States Supreme Court.
Request for Stay of Mandate Granted February 13, 1941.
Application for Writ of Certiorari Denied by United
States Supreme Court October 13, 1941.
Order directing Clerk to issue mandate, directing
that judgment of lower court and Court of
Criminal Appeals be carried out, October 22, 1941.

502

The opinion states the case.

*H. G. Goodrich,* of Dallas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State, on submission.

KRUEGER, Judge.

The offense is rape. The punishment assessed is death.

The record discloses that about 2:00 P. M. on the 23rd day of April, 1940, three young negroes appeared at the home of Sam D. Grogan during his absence and by force raped his wife. Mrs. Grogan testified that the three negroes appeared at her home and asked for a drink of water; that she directed them to the well; that after they had drunk they asked for something to eat. She told them that she had nothing cooked. They then asked for work. She told them to go and see her husband and directed them to a tenant house where she thought he had gone to make some repairs. They left but soon returned stating that he was not there; that they could not find him. At this time she noticed that her screen door was not hooked and when she undertook to fasten it with the hook, the appellant grabbed her and she began to call for help. The other two negroes came to the assistance of appellant and they carried her into the kitchen where they threw her upon the floor and two of them held her while the third one raped her. This procedure continued until each one of the three had had an act of sexual intercourse with her. Mrs. Grogan resisted them with all her might and strength but without avail. After the culprits had completed their fiendish deed they took with them an alarm clock, a locket and a lavalier. This all took place in Dallas County, Texas.

A short time after the occurrence her husband returned and she reported the matter to him who in turn notified the officers who immediately responded to the call. The officers obtained a description of the three negroes and about 6:00 P. M. on said day the three were arrested on the corner of Olive and San Jacinto Streets in the north part of the City of Dallas. They were placed in jail.

On the afternoon of the next day, appellant, after being duly warned by Bill Decker that he did not have to make any statement concerning the offense with which he was charged but that any statement he might make could be used in evidence against him, made a voluntary confession in which he admitted that he and his companions by force raped Mrs. Grogan. Upon information given by appellant to the officers they found the lavalier in the creek where he said he had thrown it. All the other articles were recovered from his companions.

Dr. Duncan, who examined the injured party within a short time after the occurrence, testified that he found unmistakable evidence that she had been attacked. She was bleeding freely and the whole vagina was red and irritated. Two or three days later he again examined her and found evidence of gonorrhea and chancroids which are associated with venereal diseases. An examination of Albert Wesley, the defendant, failed to show any venereal disease but that of McDay, his companion, did. He had both gonorrhea and chancroids.

Appellant did not testify and did not repudiate the confession or any part thereof. He filed a plea for a suspension sentence in the event of his conviction and introduced proof in support thereof.

The court in his charge fully and fairly applied the law to facts in the case and no objections were urged thereto.

By Bill of Exception No. 1 appellant complains of the introduction in evidence of his purported confession. He claims that he objected to its introduction in evidence on the ground that it was made under duress and while in custody and that he was forced by the officers to sign it; that it was taken in violation of Articles 5 and 14 of the Federal Constitution and the due process clause of each of said amendments. This bill is qualified by the trial court who states in his qualification that there is not a scintilla of evidence that any character of force or duress was used in securing the confession, but, on the other hand, the evidence shows that the defendant was properly warned and after being so warned he dictated the statement and signed the same in the presence of witnesses after it had been read to him.

J. E. Decker, Chief Deputy Sheriff of Dallas County, testified that he placed the defendant in jail on April 24th and the defendant made the statement on the afternoon of said date, or it may have been on the afternoon of the 25th after he had been identified. Mr. Decker further testified that the defendant was warned that he did not have to make any statement at all and that any statement he made might be used in evidence against him upon the trial of the case for which the same was taken; that after being so warned the defendant dictated the statement which was reduced to writing and then read back to him by Decker, whereupon the defendant signed it in the presence of the witness Decker, Judge Sterrett, Justice of the

Peace, and Robert Finklea, reporter for the Dallas News. The witness Decker also testified that he did not deny to the defendant the right to see any of his relatives or talk to any attorney; that while the defendant was in jail he could talk to others and did so; that he was in the open corridor and could have talked to outsiders; that on the afternoon of the day he made the statement Mr. Decker took appellant out to his (defendant's) home where he talked to his mother; that during the time he was in jail he was not deprived of any meals; that he was not whipped or threatened with punishment; that as a result of the information conveyed by appellant to Mr. Decker as to where he had thrown the lavalier, he was taken to the place indicated and there in his presence the lavalier was recovered in a creek where it was submerged in water.

The court's qualification to the bill, as herein set forth, is fully supported by testimony found in the record. Appellant did not controvert the testimony given by the persons present when he made the statement, nor did he undertake to controvert the truth of the facts therein stated, neither is there any testimony from any other source that he was coerced, mistreated or by any manner induced to make said statement. Consequently the action of the court in admitting said statement in evidence was proper.

By Bill of Exception No. 2 appellant next complains of the action of the trial court in declining to sustain his motion to quash the special venire based on the ground that it was drawn on the 28th of May, 1940, and that on the following day (May 29th) he, through his counsel, made a demand upon the Clerk of the District Court for a certified copy of the names of the persons drawn as a special venire from which a jury to try him would be selected, but that the clerk of said court failed and refused to comply with the request. The court qualified the bill and in his qualification thereto states that the case was first set for trial on the 6th day of May, 1940, at which time it was passed at the request of the defendant and was then reset for trial on the 13th of May, at which time the co-defendant, Muldrow, was tried with that venire and the appellant's case was passed until the 27th; that on this date the case was again passed and re-set for trial on June 3, 1940; that on the 27th of May, a special venire of 250 men was drawn in the manner and form prescribed by law and made returnable on the 31st day of May, 1940. On the 29th of May, counsel for appellant came to the office of the judge and asked for a copy of the venire.

The court informed him that the venire list was made returnable on the 31st day of May; that the court did not know whether or not the sheriff had summoned the veniremen as yet, but that the defendant would be served with a list of veniremen on the 31st day of May; that prior to the drawing of the names from the jury wheel the defendant's attorney waived personal service and agreed that the veniremen could be summoned by postal-card service; that on the 31st day of May, 1940, the sheriff served the defendant with a copy of the special venire list and made his return of that service on said date, which gave the defendant two full days, that is, Saturday and Sunday exclusive of the date of service, and return, in which to examine the names appearing on the list; that on the 3rd day of June, 1940, when the case was called for trial the defendant filed a motion to quash the venire panel on the ground that he was not given a copy of the venire list when demanded on the 29th of May. The State filed an answer to said motion which is referred to and made a part thereof and in addition thereto, filed affidavits signed by J. E. Decker, Deputy Sheriff, and Eli Nollette, Deputy District Clerk of Dallas County; that Decker in his affidavit, which is attached to the contest in reply to the motion, stated that he served a copy of the list of the veniremen upon the appellant and made out the precept under oath; that he personally served said copy of the special venire list on the defendant on the 31st day of May, 1940. Eli Nollette, in his affidavit which is also attached to the contest of the State, stated that he made a certified copy of the list of the special veniremen and delivered same, together with the precept, to J. E. Decker on the 31st day of May, 1940; that Decker made a return of the precept showing that he served the appellant with a copy of the list of said special venire on the 31st day of May, 1940.

This court will take judicial knowledge of the fact that Dallas County, according to its population, is required to function in the selection of special veniremen under Article 591, C. C. P., which reads as follows:

"In all counties having a population of at least fifty-eight thousand, or having therein a city of twenty thousand or more population, as shown by the preceding Federal Census, whenever a special venire is ordered, the district clerk, in the presence and under the direction of the judge, shall draw from the wheel containing the names of the jurors the number of names required for such special venire, and prepare a list of

such names in the order in which drawn from the wheel, and attach said list to the writ and deliver same to the sheriff. The cards bearing such names shall be sealed in an envelope and kept by said clerk for distribution, as herein provided. If from the names so drawn, any of the men are impaneled on the jury and serve as many as four days, the cards bearing their names shall be put by the clerk in the box provided for that purpose, and the cards containing the names of the men not impaneled shall again be placed by the clerk in the wheel containing the names of eligible jurors."

Art. 601, C. C. P., reads as follows:

"No defendant in a capital case shall be brought to trial until he has had one day's service of a copy of the names of persons summoned under a special venire, except where he waives the right or is on bail. When such defendant is on bail, he shall not be brought to trial until after one day from the time the list of persons so summoned have been returned to the clerk of the court in which said case is pending; but the clerk shall furnish the defendant or his counsel a list of the persons so summoned, upon their application therefor."

It will be noted from the article last quoted that it requires that the clerk shall furnish the defendant or his counsel a list of the persons so summoned upon their application therefor. It is obvious from the language of the statute that the law does not require the officers to furnish the defendant or his counsel with a list of persons drawn from the jury wheel before they are summoned. It occurs to us that it was the intention of the Legislature that the defendant should be served not with a copy of the list of names drawn from the jury wheel but with a copy of the list of those actually summoned to appear in court so that he may have a correct list of all persons summoned as prospective jurors for at least one full day exclusive of the day of service and the day of trial in order that he may acquaint himself with the names of the men actually summoned. We do not believe there is any merit in the appellant's contention. See Harrison v. State, 3 Tex. Cr. App. 558; Foster v. State, 43 S. W. 1009.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant in his motion alleges that this court was in error in its original opinion herein where it overruled his bill of exceptions No. 1, which bill complained of the admission of a purported confession or voluntary statement in which appellant implicated himself in the attack upon Mrs. Grogan, which was the basis of the indictment in this cause.

Sitting as an appellate court, we can only take the record as presented to us, and with our best ability, garner therefrom the facts proven at the trial as a basis for our ruling on such matters. We have again carefully read the facts, and from them we have been unable to find any basis for a belief that the statement of appellant was other than voluntarily made. There was an interview with the appellant shown by the testimony, but such is not prohibited by law; there was a trip made with him to his mother's home, and near such, at his direction and under his guidance, there was discovered a piece of jewelry con- his guidance, there was discovered a piece of jewelry con- cealed in a stream of water, which jewelry was shown to have been stolen from the home of Mrs. Grogan at the time of the alleged offense. There is not a word shown in the testimony that intimates any force, coercion or intimidation of any kind was used causing this appellant to make a statement relative to this matter, and, under his failure to offer any such testimony, we are unable to see any reason to set aside such statement. While not called upon to find a motive for this statement having been made, it may have come from a desire upon the part of persons not yet hardened in the ways of criminality to clear his conscience of the burden of a hidden crime by making a clear breast of facts that were of a disturbing character in his memory. Surely this court has not had the duty placed upon it of disbelieving the witnesses whose testimony is not even challenged by one who was bound to have known the facts relative to the transaction. The jury are the judges of the facts in this State. They see the witnesses face to face; they watch his demeanor, and catch the fleeting expression that may point them unerringly to the truth that they are seeking. They have the added privilege of seeking the accused and his actions come under their observation throughout the whole trial; and under the laws of this State we have no right to set aside their ver- dict on a question of fact unless it is so clearly wrong that reasonable minds can not differ thereon. They are in so much

better position to judge of matters of fact that such matters are relegated to their judgment subject only to a reviewing power in the event of a palpable abuse thereof.

For another reason do we believe this statement to be admissible. Art. 727, C. C. P., relative to the use of confessions, reads as follows:

"The confession shall not be used if, at the time it was made, the defendant was in jail or other places of confinement, nor while he is in the custody of an officer, unless made in the voluntary statement of accused, taken before an examining court in accordance with law, or be made in writing and signed by him; which written statement shall show that he had been warned by the person to whom the same is made: First, that he does not have to make any statement at all. Second, that any statement made may be used in evidence against him on his trial for the offense concerning which the confession is therein made; or, unless in connection with said confession, he makes statements of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed. If the defendant is unable to write his name, and signs the statement by making his mark, such statement shall not be admitted in evidence, unless it be witnessed by some person other than a peace officer, who shall sign the same as a witness."

It is the long established doctrine in Texas that although the confession itself was involuntary and could not be used against the accused, on that objection being offered, nevertheless if the accused therein makes statements which conduce to establish his guilt, such as the causing of the finding of secreted or stolen property, then the whole of the confession becomes admissible. We have recently held in Hamon v. State, 119 S. W. (2d) 1057, 135 Tex. Cr. R. 347, as follows:

"In this connection we quote from 18 Tex. Jur. 179, as follows: 'Regardless of whether the accused was under arrest or had been warned, his verbal, or written confession is admissible where the facts and circumstances stated have been found to be true and conduce to establish his guilt. Such facts and circumstances may consist of finding of secreted or stolen property or the instrument with which the crime was committed, or of the discovery or identity of the remains, clothing, jewelry or personal effects of the person whom the accused is charged

of having murdered. This is true even though the confession was involuntary or was procured by force, threats or intimidation, persuasion, assurance of protection against mob violence or deception.'

"In support of the text many authorities are cited, among them being Washington v. State, 86 Tex. Cr. R. 327, 216 S. W. 869; Brown v. State, 26 Tex. App. 308, 9 S. W. 613; Ferguson v. State, 118 Tex. Cr. R. 57, 40 S. W. (2d) 107; Singleton v. State, 87 Tex. Cr. R. 302, 221 S. W. 610."

Also see the late cases of Ramirez v. State, 135 Tex. Cr. Rep. 442, 125 S. W. (2d) 597; Herrera v. State, 136 Tex. Cr. R. 88, 124 S. W. (2d) 147; Whitehead v. State, 134 Tex. Cr. R. 579, 116 S. W. (2d) 703; Stelman v. State, 123 Texas Crim. Rep. 330; 58 S. W. (2d) 831; Queseda v. State, 132 Texas Crim. Rep., 497, 105 S. W. (2d) 666; Haggins v. State, 113 S. W. (2d) 192; Keppler v. State, 113 S. W. (2d) 900; Brooks v. State, 134 Tex. Crim. Rep. 269, 115 S. W. (2d) 678.

While holding that the confession introduced in evidence was admissible as a voluntary statement, we also think such statement was admissible upon the further ground that such statement conduced to the finding of further evidence that established the guilt of the accused to the satisfaction of the minds of the jury. While the verdict is a severe one, the act charged was an outrageous one, and one that the legislature has seen fit to authorize the extreme penalty in punishment therefor. We have no right, under our duty as we see it, to do aught other than to overrule this motion on a record that we think is free from error.

The motion is overruled.

### ORDER ON MANDATE.

HAWKINS, Presiding Judge.

On December 4, 1940, the judgment of conviction in the lower court was affirmed in an opinion of that date. Appellant's motion for rehearing was overruled on February 12, 1941. A request for stay of mandate was granted on February 13, 1941, for 90 days in order that appellant might present to the Supreme Court of the United States an application for writ of certiorari to review the action of this court. On October 13, 1941, the Supreme Court of the United States denied the writ of cer-

tiorari on the ground that the application therefor had not been filed within the time provided by law. This court has been apprised of such action by a copy of the order entered by the Supreme Court of the United States.

It is therefore the order of this court that the Clerk thereof issue mandate directing that the judgment of the lower court and of this court be carried out.

This, the 22d day of October, 1941.