### R. P. HILLIN v. THE STATE.

No. 15524. Delivered February 22, 1933.
Reported in 57 S. W. (2d) 843.

The opinion states the case.

*J. A. Gooch, Frank H. Rawlings,* and *R. V. Nichols,* all of *Fort Worth,* and *Morrow & Clarke,* of Hillsboro, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is negligent homicide of the second degree; the punishment a fine of one hundred dollars.

The indictment charges J. C. Morgan and appellant jointly with causing the death of Sterling Copeland; it being averred, in substance, that appellant and Morgan were in the performance of an unlawful act. Apparently the pleader attempted to charge that the unlawful act was a misdemeanor, as it is averred that appellant and Morgan unlawfully obstructed State Highway No. 2 in Hill county. Without setting out the indictment, it is observed that it is not clear whether a violation of the provisions of article 784, P. C., or section 10 of article 827a, 1932, Cumulative Annual Pocket Part of Vernon's Annotated Penal Code, is charged. Article 784, supra, among other things, denounces as a misdemeanor the act of wilfully obstructing any public road, etc. Section 10 of article 827a, supra, declares it to be a misdemeanor for any person to park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main-traveled portion of any highway, outside of any incorporated town or city, when it is possible to park or leave such vehicle standing off of the paved or improved or main-traveled portion of such highway. Further, it is provided in said section that in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway, unless a clear and unobstructed width of not less than fifteen feet upon the main-traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of 200 feet in each direction upon such highway.

We are constrained to agree with appellant's contention that the motion to quash should have prevailed. Article 414, C. C. P., requires that the offense be set forth in the indictment in plain and intelligible words. Punchard v. State, 54 S. W. (2d) 110. All that is essential to constitute the offense must be explicitly charged and can not be aided by intendment. Middleton v. State, 25 S. W. (2d) 614, and authorities cited. We are unable to reach the conclusion that a presumptively innocent man could ascertain from the indictment whether the unlawful act was the wilful obstruction of a highway or the parking of automobiles in a manner denounced as a misdemeanor in article 827a, supra.

Other attacks were made on the indictment which we do not undertake to discuss. If another indictment should be re-

turned the elements of negligent homicide of the second degree should be explicitly charged. We quote from Van Arsdale v. State, 249 S. W., 863, as follows: "The elements of negligent homicide in the second degree thus appear to be charged, i.e., a homicide by the act of appellant; that such homicide resulted from his carelessness and negligence; the apparent danger of causing death; the lack of an intent to kill; and that at the time of such homicide appellant was engaged in an unlawful act."

The state relied upon circumstantial evidence. Appellant did not testify, and introduced no witnesses. The proof on the part of the state was, in substance, as follows: Sterling Copeland, deceased, was returning home from Hillsboro somewhere between 12 and 1 o'clock on the night of May 2, 1931. While traveling north in his Ford automobile on the concrete highway between the towns of Itasca and Grandview, deceased ran his car into the rear end of a Sproules truck in such manner as that the entire front end of the car was demolished. Deceased's car became engulfed in flames, and the body of deceased was burned. It was impossible to tell whether death resulted from the collision or was caused by burning. The truck deceased struck was headed north and was on the right-hand side of the pavement going north. After the collision another Sproules truck was seen on the highway. This truck was headed south, and was on the right-hand side of the pavement going south. Its lights were burning. It was near deceased's car.

A witness for the state, who lived near the scene of the collision, heard the crash of the vehicles and ran to the door to see what was taking place. She saw a burning car and a truck standing on the right of the road. The lights of this truck were on. She also saw another truck in front of deceased's car. Witnesses visiting the scene of the collision declared that the truck deceased's car hit was headed north. At the time they reached the scene the truck which was headed north was about forty feet in front of deceased's car. There was a second truck there which was headed south. This truck was on its side of the road, just a few steps south of the burning car. The lights were on. The truck headed north was on the right side of the road going north. The truck drivers gave one of the witnesses their names. He wrote the names on a slip of paper, which he gave to the city marshal of Itasca. The city marshal lost the slip, but testified that it bore the names of J. C. Morgan and appellant.

Grandview and Itasca are approximately eight and one-half miles apart. At about 12 o'clock on the night of the collision

appellant came into a sandwich shop in Grandview and asked the night watchman if he had seen a truck going north, saying that he was to meet a truck either between Grandview and Alvarado or between Alvarado and Burleson. Appellant was driving a Sproules truck. Shortly thereafter, the night watchman heard the truck move out, and observed that it was traveling south. About 12 o'clock the same night, the night watchman of Itasca observed a Sproules truck pass through Itasca and drive on north. Fifteen or twenty minutes after this truck drove out on the highway, deceased came into the town of Itasca in his Ford car. Stopping at a sandwich shop, he remarked that he was sleepy, and the proprietor asked him if he wanted a cup of coffee. He said he believed he did not, and took a glass of water. Shortly thereafter he headed out north on the highway in the direction the truck had gone. Shortly before the collision a state's witness drove over highway No. 2, between Itasca and Grandview. A little after 12 o'clock he passed a Sproules truck headed north. This truck was standing on the highway at a point apparently near where the collision occurred. The driver was lying over in the truck as if asleep. He had no lights burning. Before reaching Grandview, the witness met another Sproules truck traveling south.

It is clear from the testimony that the truck going south on the highway was not hit by the car of deceased. If it should be conceded that appellant was sufficiently identified as one of the truck drivers, it is apparent that he was driving the truck traveling south. There is an entire absence of testimony as to where the truck going south was at the time the car of deceased struck the truck traveling north. The only evidence in this connection is that there was on the scene shortly after the accident a truck headed south and that this truck was located south of the burning car, and with its lights burning. There is no evidence to show when this truck arrived, and an entire absence of proof that it was there at the time of the collision. There is proof to the effect that the truck headed north was parked on the highway shortly before the collision. However, a witness for the state testified that the driver of this truck stated to him, in substance, as well as he remembered, that he did not know what had hit him "until he had gone on a little ways." The proof shows that the drivers of the trucks attempted to extricate deceased from his burning car. The hypothesis is reasonable, under the circumstances reflected by the record, that the truck going south came upon the scene after deceased had run his car into the back end of the truck going north, and stopped for the purpose of attempting to extricate

deceased from his wrecked and burning car. Hence the demand of the law of circumstantial evidence to the effect that the circumstances must exclude . every other reasonable hypothesis except that of the guilt of the accused was not met. Graves v. State, 43 S. W. (2d) 953. To warrant a conviction on circumstantial evidence, there must be "proof to a degree of certainty greater than a mere probability or strong suspicion tending to establish that the party charged was the person" who committed the offense, or "was a participant in its commission." Branch's· Annotated Penal Code, sec. 1877; Graves v. State, supra, and authorities cited.

The judgment is reversed and the prosecution ordered dismissed.

*Reversed and prosecution ordered dismissed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.