**Mair J. SCHEPPS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 40895.**

Court of Criminal Appeals of Texas.

Jan. 24, 1968.

On Rehearing May 15, 1968.

Rehearing Denied Oct. 9, 1968.

928

Procter & Jones by, Les Procter, James H. Granger, Austin, for appellant.

Thomas D. Blackwell, Dist. Atty., Phillip A. Nelson, Jr., Asst. Dist. Atty., and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is being an accomplice to certain named principals in the commission of the offense of printing and making a counterfeit cigarette tax stamp; the punishment, seven years in the Department of Corrections.

Appellant's first ground of error is that the court erred in overruling his exceptions to the fourth count of the indictment under which appellant was convicted. The indictment was drawn under Chapter 7 of Title 122A, V.A.T.S., "Cigarette Tax Law". Article 7.38 of said chapter denounced the offense, to which appellant was charged as being an accomplice. It is appellant's contention that the definition of a counterfeit stamp which is set forth in Article 7.01 of said chapter should have been incorporated in the indictment.

He relies upon cases such as McNelly v. State, Tex.Cr.App., 152 S.W.2d 771, in which this Court held that an essential element of the offense of enticing a minor away from a parent or guardian or one standing in stead of a parent or guardian was that the person from whom the child was enticed was either a parent or guardian or one standing in stead of such parent or guardian.

Another authority upon which he relies is Hillin v. State, 123 Tex.Cr.R. 22, 57 S.W.2d 843, which held that an indictment which merely charged an accused with "unlawfully obstructing a public road" was not sufficient since there were several different ways in which such act might be accomplished, covered by different statutes, and that the manner in which the obstruction was effected was an essential element of the crime sought to be charged.

In Calcoat v. State, 37 Tex.Cr.R. 245, 39 S.W. 364, where an accused was charged with illegal voting, this Court held that the allegation that he was not a qualified voter at the election precinct at which the voting took place was a necessary ingredient of the offense charged.

■ We find ourselves in accord with such holdings, but conclude that the indictment in this case is sufficient to apprise the accused of the nature of the offense with which he is charged, which is all that is required under our holdings in Crawford v. State, 170 Tex.Cr.R. 393, 341 S.W.2d 454;

Rushing v. State, 161 Tex.Cr.R. 334, 277 S.W.2d 104; Cortez v. State, Tex.Cr.App., 275 S.W.2d 123; and cases there cited.

■ We further observe that the indictment charges the accused with being an accomplice to the making and printing of a *cigarette* tax stamp. The misdemeanor offense denounced by Article 1113, V.A.P.C. (redrafted as Sec. 17.28, Texas Bus. & C., effective September 1, 1967) makes no mention of cigarette tax stamps. If ever applicable to cigarette tax stamps, Article 1113, supra, (Sec. 17.28, supra) certainly is no longer applicable since the enactment of Article 7.28 of Title 122A, supra. It therefore follows that since the indictment included the term "cigarette tax stamp" the offense charged was a felony and not the misdemeanor denounced by Article 1113, supra.

We will reserve discussion of appellant's second ground of error until a future point in this opinion.

■ His third ground is that the court erred in failing to require the State to elect upon which offense it would rely for a conviction. It should be remembered that the indictment charged appellant with being an accomplice to the making and printing of *a* counterfeit cigarette tax stamp, and the proof necessarily involved the showing that thousands of stamps were printed. There was no practical way by which the State could isolate one package of cigarettes and base its case thereon. In Long v. State, 258 S.W.2d 818, this Court said:

"We think it would have been useless, as well as idle, to say that the State would have to elect as to which bottle out of the 20 lugs of whiskey found there that appellant intended to sell."

We overrule appellant's contention that the State should have been required to elect.

Appellant's reliance upon Bates v. State, 165 Tex.Cr.R. 140, 305 S.W.2d 366, and O'Clair v. State, Tex.Cr.App., 364 S.W.2d

375, is unfounded because in each case separate and distinct acts of intercourse were shown to have occurred at various times and places.

Appellant's fourth and fifth grounds of error grow out of the court's refusal to "excise from" the confessions of the alleged principals any reference to him. Reliance is had upon certain language contained in the opinions of this Court in Browney v. State, 128 Tex.Cr.R. 81, 79 S. W.2d 311. Appellant neglects to note that this Court discussed Browney, supra, at some length in Louvier v. State, 165 Tex. Cr.R. 167, 305 S.W.2d 574 (cert. den., 356 U.S. 923, 78 S.Ct. 707, 2 L.Ed.2d 717), wherein we held that Browney v. State, supra, was not authority which will support the appellant's contention that the admission of the principal's confession showing the guilt of the accomplice constituted reversible error. This is not to be construed as holding that the confession of a principal which recited an extraneous offense would be admissible against either the principal or the accomplice.

In the case at bar the court's charge properly limited the jury's consideration of the principal's confession in substantially the same terms as set forth in our opinion in Louvier v. State, supra, which is the last expression of this Court on this question. We find no merit in appellant's fourth and fifth grounds of error.

■ His sixth ground of error is that the court erred in failing to grant a mistrial when the witness Grace testified that he had briefly observed a counterfeit cigarette tax stamp #29244 on a package of cigarettes in appellant's possession on September 8, 1964, prior to the discovery of the counterfeiting machine at another location on October 29, 1964. The court sustained the objection and instructed the jury not to consider the same. After he had re-examined the witness' qualification as an expert in the absence of the jury, the court then asked the jury to pay particular attention to the instruction he was about to give

them, and again instructed them that they were not to consider the witness' conclusion that the stamp which he had observed only briefly was a counterfeit.

Clearly the opinion of the majority in Craig v. State, 169 Tex.Cr.R. 23, 331 S.W. 2d 925, relied upon by the appellant, is not authority calling for a reversal of this conviction. In that case the State was permitted to show that the accused was apprehensive about a charge of murder then pending against him, and also feared that he would be investigated and prosecuted for another murder.

What we have here is a witness expressing an opinion which the court tells the jury not to consider, and after a full investigation as to the witness' competency to express such an opinion from his cursory examination in the absence of the jury, the court again instructs the jury in emphatic terms not to consider the opinion testimony of the witness Grace. It will be presumed that the jury heeded the court's instructions and did not consider the testimony which he told them was inadmissible. Moore v. State, 7 Tex.App. 14, 19; 13A Texas Digest, Criminal Law ⬥1169(5).

■ His seventh ground of error is his contention that the State failed to connect the random purchases of cigarettes throughout the City of Houston which bore counterfeit tax stamps with appellant. Each package so purchased was submitted to the witness Mitchell, the tax stamp analyst for the Pitney-Bowes tax stamp manufacturing company of Stamford, Connecticut. He examined each of the randomly purchased cigarette packages and testified that they were not stamped with the authentic stamp made by a Pitney-Bowes stamping machine. Four employees of the Comptroller Department kept certain locations under surveillance for a number of days and observed who supplied such locations with cigarettes. They later bought cigarettes bearing counterfeit stamps from such locations. It was shown by other witnesses that the persons who de-

livered cigarettes to the said locations secured all of their cigarettes from the House of Tobacco, of which the appellant was the dawn-to-dusk operating president. This, we conclude sufficiently connected the random purchases with appellant.

■ His eighth ground of error is that the court failed to adequately charge the jury not to consider evidence relating solely to the abandoned counts in the indictment which charged the appellant as a principal. We quote in part from appellant's objections to the court's charge:

"In this connection the defendant says that the Court's instruction on page one of the Charge wherein the court says ' * * * you are instructed not to consider the first, second and third counts in the indictment or any evidence or testimony, if any, given solely on said counts for any purpose whatsoever,' is not a sufficient instruction to the jury to tell the jury what evidence they may not consider in their deliberations on Count Four of the indictment."

This Court said in Morris v. State, 96 Tex.Cr.R. 605, 258 S.W. 1065, at 1068:

"In the case before us the exception stressed in the motion is stated as follows:

'That said charge should limit the purpose of the testimony offered relative to the alleged sales and various other offenses attempted to be proved and proved in this cause, and the charge nowhere limits said proof, or shows its purpose,'

"This exception is too general. It points out no evidence which the court fails to limit in its charge. How could the trial court then, or how can this court now, know what particular evidence appellant embraced in this complaint?"

Appellant's eighth ground of error is overruled.

■ In appellant's ninth ground of error he contends that the search at the House of Tobacco was not authorized and that the fruits of said search were not admissible over his objection without the State presenting the search warrant authorizing the search to this trial court. He relies upon Chorn v. State, 107 Tex.Cr.R. 521, 298 S.W. 290; Henderson v. State, 108 Tex.Cr.R. 167, 1 S.W.2d 300; Skiles v. State, 109 Tex.Cr.R. 6, 2 S.W.2d 436; Humphreys v. State, 116 Tex.Cr.R. 304, 31 S.W.2d 631; Taylor v. State, 120 Tex.Cr.R. 268, 49 S.W.2d 459; Brown v. State, 166 Tex.Cr.R. 322, 313 S.W.2d 297. See also Vines v. State, Tex.Cr.App., 397 S.W.2d 868; and Blackburn v. State, 145 Tex.Cr. R. 384, 168 S.W.2d 662.

There can be no question as to the soundness of each of the above holdings, but such cases have application only where the legality of the search is dependent upon the warrant. When a search is authorized by statute, then no affidavit for a warrant and no search warrant are necessary.

The House of Tobacco was duly licensed by the State Comptroller as a tobacco distributor. Such a license carried with it the obligation to permit the Comptroller of Public Accounts or his duly authorized assistants and employees to inspect the licensed premises to determine cigarette tax liability. Articles 7.27 and 7.01 of Title 122A, V.A.T.S.

This Court has held that inspectors of the Liquor Control Board might enter upon the premises of a licensee without a search warrant. Plainos v. State, 131 Tex.Cr.R. 516, 100 S.W.2d 367, and Kelley v. State, 133 Tex.Cr.R. 180, 109 S.W.2d 482. See also Article 666–13(d), V.A.P.C., "Texas Liquor Control Act." The authority to search granted to the Comptroller and his employees and assistants under Article 7.27, supra, is comparable to the authority granted to the Liquor Control Board inspectors by Article 666–13(d), supra.

We are not unmindful of the two recent decisions of the Supreme Court of the

United States, Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930; and See v. Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943. In neither case was probable cause shown, nor were the searches conducted on a licensee's premises by an employee of the licensing authority. From Camara, supra, we take this quote: "The test of 'probable cause' required by the Fourth Amendment can take into account the nature of the search that is being sought." In the case at bar several teams of officers and employees of the Comptroller of Public Accounts armed with ample probable cause were making simultaneous raids at different locations in the City of Houston in order to discover cigarettes bearing counterfeit tax stamps which emanated from the same source, and speed was of the essence.

■ In appellant's tenth ground of error he contends that the search and seizure at the garage at Oranzo Terry's home was unreasonable and unlawful and the admission into evidence of the fruits of the search constituted error. Appellant has no standing to question the legality of the search of premises not under his control *when he was not present* at the time of the search. Henley v. State, Tex.Cr.App., 387 S.W.2d 877, at 880; and Holcomb v. State, 356 S.W.2d 932.

■ His eleventh ground of error is that the search and seizure at the home of Mike Eyster, where he kept his stock of cigarettes, was unlawful. Eyster was also shown to be a licensee whose premises were subject to inspection just as was appellant's place of business, and appellant had no standing to question the legality of such search. We find no merit in this contention.

■ As ground of error #12, appellant complains that he was denied an opportunity to inspect prior statements and memoranda of certain witnesses for the purpose of cross-examining such witnesses where they had prior to trial refreshed their memory therefrom. There is no showing that the statements were used or exhibited in the presence of the jury. The trial court declined to make such statements available for counsel's use in cross-examination, but examined the same and certified that he found no discrepancy therein from the witnesses' testimony. The appellant took no further action at the time of each refusal and made no subsequent effort to have the instruments or memoranda produced for the record. It is observed that in his 32 designations of material for the appellate record under the terms of Sec. 2 of Article 40.09, V.A.C.C.P., appellant made no request that such statements be forwarded to this Court. This can only mean that he was satisfied with the trial court's conclusion. Otherwise, he would have requested that the same be forwarded to this Court so that we might determine if inconsistencies were shown and thereby determine if appellant had been injured. No harm to appellant has been shown and no error presented. Travis v. State, Tex.Cr.App., 416 S.W.2d 417. McLain v. State, Tex.Cr.App., 383 S.W.2d 407; Moreno v. State, Tex.Cr.App., 341 S.W.2d 455.

■ Appellant's thirteenth ground of error is that several of the State's witnesses made unresponsive and harmful answers to questions propounded to them. As an example he cites the witness Grace's answer to a question as to whether he knew appellant's wife. The witness replied that he had seen her at the Federal trial in Houston. Appellant's wife previously testified that she and appellant had been the victims of a brutal beating in the course of a robbery committed upon them. There is nothing in the answer which would indicate whether she was there as a prosecuting witness in connection with the robbery and beating or as an accused in connection with this or any other offense charged. No prejudice to appellant resulted in such answer.

■ Another is the answer to the question:

"Q. Can you identify, match and contrast these impressions?

A. In this case, I can. There might be other cases that would be more dificult, but I believe that this is the most obvious case I have worked on."

The court promptly sustained appellant's objection and instructed the jury to disregard the answer. We have concluded that this answer with the court's instruction did not call for a mistrial.

As stated earlier in the opinion, we reserve to the last a discussion of the sufficiency of the evidence to support this conviction. Each of the principals, save Terry, were shown to be illiterate laborers in the employ of appellant. The surveillance conducted by employees of the State Comptroller proved without peradventure of a doubt that on each of several successive days they left appellant's place of business between three and four o'clock in the afternoon in a certain panel truck, drove by a circuitous route to the home of Terry, one of the principals, where they backed into his garage, whereupon the overhead door was promptly closed. After a short period of time, the truck was moved out and the principals then again promptly closed the door and remained therein for approximately two hours. The door was then opened and the truck was backed into the garage where it remained until early the next morning, at which time one of the principals, appellant's employee, drove the truck to appellant's place of business, arriving there at the same time as did the appellant. After observing this procedure for a number of days, an affidavit was executed, and a search warrant was issued. The named principals, with Terry acting as lookout, were apprehended in the act of stamping cigarettes with a counterfeit stamp machine, and each of them, except Terry, executed written confessions admitting their guilt as counterfeiters.

Having concluded that the evidence is sufficient to support the conviction and that no reversible error appears, the judgment is affirmed.

OPINION
ON APPELLANT'S MOTION
FOR REHEARING

BELCHER, Judge.

■ Upon further consideration in light of appellant's motion for rehearing, we have decided that we erred in overruling his grounds of error Nos. 4 and 5, which complain that the principals' written confessions contained hearsay statements implicating him that should have been excised and said confessions denied him the right to be confronted with the witnesses whose written statements were introduced against him.

The testimony of the state's witnesses who apprehended the principals Fusilier, Vitello, Reyes, and Terry in the act of stamping cigarettes with counterfeit stamps in the garage at Terry's home, while Terry was acting as lookout, sufficiently established the guilt of the principals as counterfeiters. In addition to the positive testimony showing that the principals were caught "red-handed," the state introduced in evidence the written statements of three of the principals which showed the commission of the offense of counterfeiting. Although not necessary to prove the guilt of the principals, the state introduced their written confessions in their entirety, and they contain numerous incriminating statements relating to the guilt of the appellant as an accomplice.

Following the action of the court in overruling appellant's objections to the admission in toto of the principals' written confessions on the ground that they were hearsay and implicated him, the appellant requested the court to excise the portions

referring to either Mair Schepps or the House of Tobacco. The appellant objected to the refusal of the court to grant his request.

The written confessions of the principals, Fusilier and Reyes, which were introduced in evidence in their entirety read as follows:

VOLUNTARY STATEMENT OF Warren Joseph Fusilier

October 29    A.D. 1964

I, Warren Joseph Fusilier , after first being duly warned by Texas Ranger J. L. Rundell , the person to whom this statement is made, as follows:

FIRST—That I do not have to make any statement at all;

SECOND—That I have a right to consult with a lawyer, which right I hereby waive; and

THIRD—That any statement made by me may be used in evidence against me in the trial or trials of the offense or offenses concerning which this statement is made, do hereby make the following voluntary statement:

My name is Warren Joseph Fusilier    I live 3019 Oakdale St., Houston, Texas. I am 46 years old. I was born on 7/4/18 at New Iberia, La. I work for Mair J. Scheeps at 1520 Center, Houston, Texas, the address of House of Tobacco. Mair Schepps owns The House of Tobacco. I started to work for Mair Schepps in about 1949 and have worked'for him continously except for about one year in 1963. I returned to work for Schepps in the fall of 1963. All of this time my main job has been stamping and loading cigarettes for Mair Schepps. About one month ago Oranza Terry approached me and asked me if I would haul unstamped cigarettes to his house and said we would work in his garage and he would pay me $10.00 for each trip. I agreed to help Oranzo Terry. Oranzo Terry told me I would get the unstamped cigarettes from House of Tobacco. Each day that we were to work, Mair Schepps would tell me to load a certain number of cases of unstamped cigarettes on to the green Chev. Panel truck and take them to to Oranzo Terry residence. Mair Schepps at the start of the operationat the Oranzo Terry residence, told me to stop by 601 Preston and pick up Casimiro Reyes and he would help stamp the cigarettes. When I first arrived at the Oranza Terry residence and saw the stamping machine, I saw that the wheel or the meter was different from the mchine I was familiar with. I suspected the machine to be fictitious and soon became convinced that it was an illegal machin _ but I was afraid to say anything, or quit because if I did I would lose my job at the House of Tobacco at 1520 Center.

Thursday, October 29, 1964, about 2:30 PM Mair Schepps told me to back the green panel truck into the building and load it up. The boys at 1520 Center had already got the cigarettes together and they helped me load the unstamped cigarettes. Schepps told me to take the cigarettes to Terry's house and I knew what to do when I got there. Casimiro Reyes was at 1520 Center because he and Johnny Vitello had been to Bryan, Texas for a load of cigarettes in the big truck. Casimiro Reyes and I in the loaded panel truck left 1520 Center at about 3:00 PM and Met Johnny Vitello

on Southmore near my residence. The three of us proceeded to 3429 North MacGregor, which is where Oranza Terry lives. I backed the truck into the driveway back to the garage door and Johnny, Reyes and I unloaded the unstamped cigarettes in the garage and closed the garage door. Every day that we worked Oranza Terry would always be there at his house waiting for us when we got there. Johnny Vitello was operating the Stamping machine today when the officers arrived. I was opening the cigarette cartoons and handing them to Johnny. Reyes was catching the stamped cigarettes and seal the carton and stacking the cartons. While we were working today, the officers arrived and stopped the operation. I thought Terry was coming in, I looked up and saw the pistol and I froze. Our normal operation, if allowed to complete it would be that the stamped cigarettes would have been loaded back on the truck and the truck backed into the garage and door closed. Terry would have taken us home or to our transportation and on the following morning (Friday, Oct. 30, 1964) Terry would come get me at 3019 Oakdale and I would pick up the truck and take it to 1520 Center, The House of Tobacco and unload the cigarettes with the regular stock. Sometimes Schepps would be there when I would arrive. On Thursday Morning, Oct. 29, 1964, when I arrived with the cigarettes we had stamped the afternoon before, Mair schepps was at 1520 Center just after i got there with the illegal stamped cigarettes. For the past month we have stamped from 30 to 40 cases of cigarettes almost every day except Sundays. Oranza Terry always paid us himself, in cash, each day after we had finished up. I can read and write the English language and I have read the above statement and it is true and correct.

/s/ Warren J. Fusilier

Witnesses: /s/ E. J. Castille

/s/ J. V. Grace

VOLUNTARY STATEMENT OF Casimiro Reyes

October 29, A.D. 1964

I, Casimiro Reyes , after first being duly warned by Texas Ranger J. L. Rundell , the person to whom this statement is made, as follows:

FIRST—That I do not have to make any statement at all;

SECOND—That I have a right to consult with a lawyer, which right I hereby waive; and

THIRD—That any statement made by me may be used in evidence against me in the trial or trials of the offense or offenses concerning which this statement is made, do hereby make the following voluntary statement:

My name is Casimiro Reyes I live Preston and Smith Streets in the Brazos Hotel, room 222. I am not married. I am about thirty years old. At the present time I work for Mr. Jake Courts at 601 and 607 Preston avenue, Houston, Texas. About one month ago Mr. Mair J.

Schepps, who I already knew, told be to go help Warren Fusilier and Oranzo Terry stamp some cigarettes. Mr. Scheeps said that Oranzo Terry would pay me. The first time we went to Oranzo Terry's house to stamp the cigarettes, Warren Fusilier came by and picked me up at Jake Courts when I finished work for the day. We went out to Terry's in the Green Chev. Panel Truck. I do not know the exact address but it is the same place where the officers arrested us to_day. After I went out to Terry's the first time to stamp cigarettes, about one month ago, I have gone back almost every day except Sundays. About a week after I had been working at Terry's Mr. Schepps asked me how much Terry was paying me. I told him five dollars. Mr. Schepps told me Terry was supposed to pay me six dollars. From then on Terry had paid me six dollars a day for helping him stamp the cigarettes. At different times I have worked with Oranzo Terry, Oranzo Terry's Son, and Warren Fusilier on the stamping machine. Today was the first day that Johnny Viatello worked with me and Warren on the stamping machine. Today Johnny Viatello and I went to Courts Wholesale in Bryan, Texas, for Mr. Schepps in the big green and white Chev. Truck to get a load of cigarettes. We got back to Center Street at Mr. Schepps at about 1:30 PM and unloaded the truck. Warren then backed the one ton green Chev. Panel truck into loading dock at Mr. Schepps place and someone helped him load it with cigarettes which we took to Terry's house. On the way to Terry's house Warren and I picked up Johnny Viatello after he parked the big truck. When we got to Terry's house we backe the truck to the garage and unloaded it. WE had forty full cases of cigarettes on the truck to be stamped today. We always stamped at least forty cases each day. After we unloaded the truck Warren pulled it up and I pulled the garage door down. We then started the machine and started stamping the cigarettes. W_ had stamped ten (10) half cases when the officers came in and arrested us. When I first started to work on the stamping machine Mr. Schepps tol_ me not to tell anybody what I was doing. I have been given the opportunity to call a lawyer but I do not care to do so at this time. Since I cannot read the English language too well this statement has been read to me by Ranger J. L. Rundell. I have not been mistreated in any manner and the above statement is true and correct.

/s/    X
His mark

It being made known to each of us by Ranger J. L. Rundell that Casimiro Reyes states that he cannot sign his name, we and each of us, not being peace officers, have witnesses him place hs mark upon the foregoing instrument.

/s/ Robert Wolfe

/s/ Charles Schneider

———◆———

The repeated references in the written confessions to Mair Schepps and the House of Tobacco were not necessary to show the guilt of the makers as principals, and it is

apparent that said references connect the appellant with the acts of the principal offenders, and show appellant's guilt as an accomplice. These references in the confessions were hearsay and incriminating and not admissible under the facts of this case, and were reasonably calculated to be hurtful and prejudicial to the appellant.

When the state had established by uncontroverted evidence the guilt of the principals as it did by the testimony of the witnesses who caught them in the act of counterfeiting, the rights of the appellant should not have been jeopardized and exposed to injury before the jury by permitting the state to go further than necessary by introducing hearsay incriminating statements relating to the guilt of the appellant. If permitted to introduce the confessions, the references to Schepps and the House 'of Tobacco should have been deleted as the appellant requested. The damage done by these hearsay statements, which had been introduced in evidence as exhibits, may have been compounded if the jury requested them during their deliberations, which the statute permits them to do. Art. 36.25, Vernon's Ann.C.C.P.

The original opinion finds no merit in appellant's fourth and fifth grounds of error for the sole reason that the court's, charge properly limited the jury's consideration of the principals' confessions in substantially the same terms as set forth in our opinion in Louvier v. State, supra.

To point out some of the hearsay incriminating statements in the confessions relating to the guilt of the appellant, a portion of Fusilier's confession reads as follows:

"Terry would come get me at 3019 Oakdale and I would pick up the truck and take it to 1520 Center, The House of Tobacco and unload the cigarettes with the regular stock. Sometimes Schepps would be there when I would arrive. On Thursday Morning, Oct. 29, 1964, when I arrived with the cigarettes we had stamped the afternoon before, Mair

Schepps was at 1520 Center just after i got there with the illegal stamped cigarettes." (October 29, 1964, is the date of the offense alleged in the indictment.)

A portion of Reyes' confession reads as follows:

"When I first started to work on the stamping machine Mr. Schepps tol_ me not to tell anybody what I was doing."

It is evident from reading the numerous references to Schepps and the House of Tobacco in the principals' confessions that the limiting charge in this case could not give the relief to which the appellant was entitled. The only safeguard of the appellant's rights depends, alone, upon the limiting charge. To depend upon the limiting charge, alone, was to speculate on the efficacy of the court's effort to remove the numerous, inflammatory, and incriminating hearsay statements in the confessions from the minds of the jury. The injury and damage to the rights of the appellant caused by the admission of these incriminating and hearsay statements before the jury could not possibly be removed by the instruction of the court to the jury not to consider them and deprived the appellant of a fair and impartial trial.

In the event of another prosecution it is observed that the law of principals and accomplices applicable to offenders should be carefully considered in light of the evidence to be offered.

The judgment of affirmance is set aside, appellant's motion for rehearing is granted, and the judgment of the trial court is now reversed and the cause is remanded.

WOODLEY, Presiding Judge (dissenting).

While I have some doubt as to other grounds of error, I am unable to agree that reversible error is shown in ground of error Nos. 4 or 5.

Appellant objected to the refusal of the court to grant his request to excise the

portions of the confessions of the principals which referred to either Mair Schepps or the House of Tobacco.

Smith v. State, 91 Tex.Cr.R. 15, 237 S.W. 265, 267, holds: "Statements in the confession which might relate solely to the guilt of the accomplice, and which throw no light on the principal's actions, should be excluded."

The Smith case is also authority for the proposition that elimination which would render the confession incomplete and fragmentary is not required and that all of the confession necessary to connect the principal in an orderly way with the transaction could be used.

The Smith case further holds:

"The fact that interwoven in the confession were expressions connecting appellant (the defendant on trial for being an accomplice) with the acts of the principal (who made the confession) would not render the statement nonavailable to the state. The same would be true though the statement tended to corroborate the testimony of some witness. These hurtful matters must be controlled by proper instructions to the jury limiting the purpose of the *confession to establishing the principal's guilt.*"

As may be seen from the above, the admissibility of the entire confession of the principal does not depend upon whether all of the statements therein are necessary to show the guilt of the principal.

MORRISON, Judge (dissenting).

I remain convinced that this case was properly decided originally and that our opinion in Louvier v. State, 165 Tex.Cr.R. 167, 305 S.W.2d 574, cert. den. 356 U.S. 923, 78 S.Ct. 707, 2 L.Ed.2d 717, is controlling.

I respectfully dissent to the reversal of this conviction on the grounds relied upon by the majority.

## OPINION
## ON STATE'S MOTION FOR
## RE-HEARING

ONION, Judge.

Subsequent to our original opinion and opinions on appellant's motion for re-hearing, the United States Supreme Court has handed down its decision in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 and Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100. The question now presented upon which this appeal must turn was not clearly raised until appellant's motion for re-hearing, but it is one that requires review under the provisions of Article 40.09, Sec. 13, V.A.C.C.P. And it must be answered before reaching any other question on the admissibility of the confessions, particularly the question of whether the trial court erred in refusing to excise from the confessions as requested.

The precise question presented is whether the appellant, charged as an accomplice to the offense of printing and making a counterfeit cigarette tax stamp, was deprived of his federal constitutional right (6th and 14th Amendments) to be confronted with the witnesses against him. See also Texas Constitution, Art. I, Sec. 10. At appellant's trial the extrajudicial confessions of three of the alleged principals named in the indictment,[1] Fusilier, Reyes and Vitello, taken after their arrest and in appellant's absence, were introduced over his specific objection that he was being deprived of his right of confrontation and cross-examination and that said confessions were hearsay implicating him.

In discussing the right of confrontation, the Supreme Court recently said in Barber

---

1. The alleged principals, named in the indictment as such, were not charged therein.

v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255:

"Many years ago this Court stated that 'The primary object of the [Confrontation clause of the Sixth Amendment] * * * was to prevent depositions or ex parte affidavits * * * being used against the prisoner in lieu of a personal examination and cross examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.' Mattox v. United States, 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409, 411 (1895). More recently, in holding the Sixth Amendment right of confrontation applicable to the States through the Fourteenth Amendment, this Court said:

" 'There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.' Pointer v. State of Texas, 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923, 927 (1965). See also Douglas v. State of Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965)." See also 21 Amer.Jur.2d, Sec. 337, p. 364; Garcia v. State, 151 Tex.Cr.R. 593, 210 S.W.2d 574.

In Pointer v. State of Texas, supra, the Supreme Court held that the constitutional right of an accused to be confronted with the witnesses against him is denied at a state criminal trial where the examining trial transcript of a witness' testimony was admitted into evidence and this testimony was taken at a time and under circumstances affording the accused no adequate opportunity to cross-examine the witness through counsel.

In Barber v. Page, supra, the Court pointed out that the accused's right to confrontation of witnesses is basically a trial right. At Barber's Oklahoma state trial for robbery, the prosecution, over objection, introduced the transcript of the testimony of a witness who was jointly charged with him, given at the preliminary hearing, at which Barber and the witness were jointly represented by the same counsel, who withdrew as the witness's attorney when such witness waived his self-incrimination privilege. Such counsel did not cross-examine such witness although an attorney for another co-defendant did. At the time of Barber's trial the witness was incarcerated in a federal prison in Texas, and the State made no effort to obtain his presence at the trial. His conviction was affirmed by the Oklahoma Court of Criminal Appeals. On certiorari from the Tenth Circuit Court of Appeals' affirmance (381 F.2d 479 (10 Cir.)) of the federal district court's rejection of Barber's habeas corpus claim of a confrontation denial, the United States Supreme Court reversed, holding that the use against Barber at his trial of the witness' preliminary hearing testimony deprived him of his Sixth and Fourteenth Amendment rights to be confronted with the witness against him at his trial.

Making the result unanimous, Mr. Justice Harlan concurred in a separate opinion on the premises of his view that the case was governed by the due process clause of the Fourteenth Amendment, stating he agreed that the State's failure to attempt to obtain the presence of the witness denied the petitioner due process.

In Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314, there was introduced into evidence against the accused an alleged confession made out of court by one of his co-defendants, Mitchell, who did not testify in court, which denied the accused any opportunity to confront and cross-

examine the witness who made this very damaging statement. There the Court said: "[A] denial of cross examination without waiver * * * would be a constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." See also Smith v. State of Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (January 29, 1968).

Further, since our opinion on appellant's motion for re-hearing and bearing strongly on the validity of limiting jury instructions, the United States Supreme Court in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, overruled Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278, and held that despite instructions to the jury to disregard the implicating statements in determining the co-defendant's guilt or innocence, admission at a joint trial of a defendant's extrajudicial confession implicating a co-defendant violated the co-defendant's right of cross-examination secured by the confrontation clause of the Sixth Amendment. See Jones v. United States, 392 U.S. 299, 88 S.Ct. 2050, 20 L.Ed.2d 1104, (June 10, 1968); People v. Aranda, 63 Cal.2d 518, 47 Cal.Rptr. 353, 407 P.2d 265.

In Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100, the Supreme Court held that the Bruton decision was not only applicable to a state proceeding (Tennessee) but that the decision overruling Delli Paoli was retroactive.

Turning aside from the constitutional issue for a moment, we should now examine the well settled Texas rule, to-wit: "that the admissions and confessions of the principal (if they would be admissible if the principal were on trial) are admissible on the trial of the accomplice, not for the purpose of proving the guilt of the accomplice, but for the purpose solely of proving the guilt of the principal." Browney

v. State, 128 Tex.Cr.R. 81, 79 S.W.2d 311, 314; See also White v. State, 10 Tex. App. 167; Smith v. State, 91 Tex.Cr.R. 15, 237 S.W. 265; 2 Branch's Anno.P.C., 2nd Ed., Sec. 754, p. 52.

The general rule of law with regard to confessions made by one party after the deed has been committed and in the absence of the accused (as these in the case at bar) has long been that such confessions of guilt can only be used against the person giving the confession and is inadmissible against others under the hearsay rule. See McCormick & Ray, Texas Law of Evidence, 2nd Ed., Sec. 1219, p. 96; 24 Tex.Jur.2d, Evidence, Sec. 667, p. 272.

An exception to such general rule appears to obtain where an accomplice is being tried separately from his principal. This exception is apparently bottomed on the fact that the State has the burden of proving the guilt of the principal in such case and, therefore, any testimony which would be admissible to show the guilt of the principal if he were on trial is admissible on the trial of the accomplice for the purpose of showing the guilt of the principal. See McCormick & Ray, Texas Law of Evidence, 2nd Ed., Sec. 1219, p. 97; 2 Branch's Anno.P.C. 2nd Ed., Sec. 754, p. 52; 24 Tex.Jur.2d, Evidence, Sec. 669, p. 273. The rule is discussed at some length in Simms v. State, 10 Tex.App. 161, where the Court recognized that a contrary rule formerly prevailed.[2] In holding the exception or rule not applicable and the confession of the principal inadmissible where the principal is a competent witness and testifies acknowledging his guilt, this Court in Browney v. State, 128 Tex.Cr. R. 81, 79 S.W.2d 311, speculated as to the reasons which gave rise to such rule. There the Court said:

"If the rule permitting the introduction of the principal's confession on the trial

**2.** "Upon an indictment against an accessory, a confession by the principal is not admissible to prove the guilt of the principal; it must be proved aluinde." 1 Russ. on Crimes (9th ed.), side p. 76.

of the accomplice to establish the principal's guilt grew out of the fact of the incompetency of the convicted principal to testify as a witness, or his nonavailability by virtue of flight or his refusal to testify as a witness for the state, then no reason appears for applying the rule in the present case."

Whatever the reasons giving birth to the rule, such rule applies only, at least in Texas, where the person whose confession is sought to be used is named in the indictment as a principal. Sapp v. State, 87 Tex.Cr.R. 606, 223 S.W. 459. Further, statements in the confession which might relate solely to the guilt of the accomplice and which throw no light on the principal's actions should be excluded. Smith v. State, 91 Tex.Cr.App. 15, 237 S.W. 265. However, it has been held that if such deletions render the confession incomplete and fragmentary, the confession in toto is admissible. In all cases, however, where the principal's confession is received into evidence, the trial court is required, at least upon proper request, to guard the rights of the accomplice on trial by limiting in his charge the purpose of the confession to establishing the principal's guilt alone. Smith v. State, supra; Hoyt v. State, 88 Tex.Cr.R. 612, 228 S.W. 936. The reliance under such rule upon such jury instructions to remove the harmful effect is the same reliance utilized in the now over-ruled Delli Paoli case.

May this rule or exception and the constitutional right of confrontation be reconciled? This writer's research has failed to reveal any Texas case where this question has been adequately discussed.

We know, of course, that many of the constitutional provisions in the nature of a bill of rights are subject to exceptions arising from the necessity of the case which were recognized long before the adoption of the Constitution, and which do not interfere at all with its spirit. The Constitution did not intend to abrogate these exceptions. Therefore, "it has been customarily held that the right of confrontation may not be invoked to exclude evidence otherwise admissible under well-established legitimate exceptions to the hearsay rule. Kay v. United States, 255 F.2d 476, 4 CCA (1958); Matthews v. United States, 217 F.2d 409, 50 A.L.R.2d 1187, 5 CCA (1954); United States v. Leathers, 135 F.2d 507, 2 CCA (1943); 5 Wigmore, Evidence, 1397." McDaniel v. United States, 343 F.2d 785, 5th Cir., (1965), cert. denied, 382 U.S. 826, 86 S.Ct. 59, 15 L.Ed. 2d 71.

Among the well recognized exceptions have been (a) dying declarations, (b) testimony from former trial, and (c) documentary evidence to establish collateral facts admissible under the common law. Recognizing these exceptions the Court in Pointer v. State of Texas, supra, observed:

"There are other analogous situations which might not fall within the scope of the constitutional rule requiring confrontation of witnesses. The case before us, however, does not present any situation like those mentioned above or others analogous to them." 380 U.S. at p. 407, 85 S.Ct. at p. 1070, 13 L.Ed.2d at p. 928.

Further, new exceptions to the hearsay rule may be created, without violating constitutional rights, if there exists a reasonable necessity for it and it is supported by an adequate basis for assurance that the evidence has those qualities of reliability and trustworthiness attributed to other evidence admissible under long established exceptions to the hearsay rule. See Kay v. United States, (4 Cir.) 255 F.2d 476. While the Sixth Amendment does not prevent the carving out of new exceptions, it does embody the requirements of real necessity and adequate guarantees of trustworthiness as essential to all exceptions to the rule, present or future, for otherwise legislative bodies and courts could abolish the right of confrontation by simply making unlimited exceptions to the hearsay rule. See Matthews v. United States, supra.

See also Note 113 University of Pennsylvania Law Review 741, 748. Further, in Barber v. Page, supra, the Court made it clear that the rationale of hearsay exceptions in criminal cases must be continually re-evaluated.

Can it be said that the exception here under consideration embodies these requirements? First, is there a real necessity for its existence? The prosecution can only claim the benefit of such exception with regard to the principal's confession when there is in fact a confession. Such confession cannot be used unless the principal is named in the indictment, and even then it cannot be offered if the named principal testifies, acknowledging his guilt. Browney v. State, supra. In joint trials of the principal and accomplice, it would not now be usable. Bruton v. United States, supra. In separate trials of the accomplice where other evidence has clearly established the principal's guilt, the convenience of introducing the principal's confession is not apparently greater than the convenience of admitting any hearsay. Certainly in these trials the State has a heavy burden and from time to time cases will arise where it might be impossible without the confession to meet that burden, but similar situations exist in many types of criminal trials where there is not the benefit of any such exception.

In the case at bar the State made no effort to demonstrate any great probative need for the evidence or to show that the alleged principals were actually unavailable to the prosecution as witnesses; they merely relied upon the old exception.

Second, what about the adequate guarantees of trustworthiness? One could speculate at length as to why people confess—fear, duress, conscience, revenge, reward, offers of immunity or leniency, etc.

While a confession is admissible against the person making the same as a declaration against interest, what he says therein about others may be based on spite, on fear, pique, malice, or other motives not leading to the truth. When the State has laid the proper predicate to authorize the introduction into evidence of the principal's confession, does this assure the trustworthiness of the instrument, without the accused's right of cross-examination, or to test the recollection of the principal and without the opportunity for the jury to observe the principal's demeanor? I think not.

It is observed that the majority in Bruton characterized the credibility of incriminating extrajudicial statements of a codefendant as being "inevitably suspect." The dissent acknowledged that such statements "have traditionally been viewed with special suspicion," and as they incriminate others "are less credible than ordinary hearsay." Therefore, the exception here under consideration does not furnish some guarantee of truth in a degree serving the purpose of an oath and cross-examination and some measure of necessity for resorting to hearsay.

The unreliability of such evidence is intolerably compounded when the alleged principals, as here, do not testify and cannot be tested by cross-examination. In the case at bar, while the State established that the confessions were taken in accordance with the law then in existence, the unsworn confession of the alleged principal, Reyes, was taken in the English language and the record reflects he neither reads or writes English and that he signed the confession implicating the appellant with an "x."

The only safeguard furnished the nonconfessing defendant (or accomplice) under the practice permitted by such exception is the limiting jury instructions or admonition to confine the evidentiary effect to the confessing principal. Is such admonition sufficient? While it is reasonable to assume that in many cases the jury can and will follow a judge's limiting instructions as to such information, "[n]evertheless, as was recognized in Jackson v. Denno * * * there are some contexts in

which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored * * *" Bruton v. United States, supra. The context presented here is the same or similar to that in Bruton and such admonition cannot be considered sufficient.

There can be little question but that the practice under the exception is prejudicial and unfair to the non-declarant accomplice and presents a serious flaw in the fact finding process at trial.

Lacking the necessary elements of real necessity and the assurance of trustworthiness so essential, no sufficient rational basis or justification exists for the continued life of this exception to hearsay rule, and it must give way to the constitutional right of confrontation, in absence of any affirmative waiver of that right by the accused. This is particularly true when the question is considered in the light of the recent Supreme Court decisions discussed at the beginning of this opinion. Compare also Kirby v. United States, 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890 (where Sixth Amendment invoked as basis for barring similar evidence).

Certainly it may be argued that none of these decisions involved the admissions of an alleged principal's confession at the separate trial of an accomplice, but we cannot waltz around the important constitutional issue here involved and validly distinguish the cases by simply color matching the facts. We cannot adopt the luxury of merely saying this case involved the use of examining trial testimony, this one did not; that case was a joint trial, this one was not.

"In criminal actions, where life or liberty is at stake, courts should not adhere to precedents unjust to the accused. It is never too late to mend." United States v. Delli Paoli (2d Cir.), 229 F.2d 319, 323.

The State, of course, was required to prove the guilt of the alleged principals in the case at bar in order to convict the appellant as an accomplice, and it was entitled to present all the legitimate evidence it possessed to sustain its burden of proof despite the fact the evidence already presented appeared to have clearly established that element of the offense charged. The State, however, because of its burden of proof, was not entitled to introduce the extrajudicial confessions of three of the alleged principals in violation of the appellant's federal and state constitutional right of confrontation.

In the case at bar, despite appellant's objections, the State made no effort to show that the appellant had previously been afforded an adequate opportunity to be confronted by and to cross-examine the three principals whose confessions were used and that they were presently unavailable to the State so as to bring the case within the recognized exception to the constitutional right of confrontation. See Barber v. Page, supra.

For the reasons stated, the State's motion for re-hearing is overruled.

MORRISON, Judge (concurring).

Since the rendition of our original opinion herein the Supreme Court of the United States has decided several pertinent cases (which are set forth in my brother Onion's opinion) which have caused me to reappraise my original disposition of appellant's fourth and fifth contentions on appeal and to consider the objection made at trial, but raised only inferentially in this Court on original submission, that the admission of the confessions of the principals deprived this appellant of the right to confrontation.

Although it is true that Bruton and the other cases cited by Judge Onion are not, as is this case, a case "where on trial of the defendant it becomes necessary to show

the guilt of another"[1] it is clear to me that the rationale of Bruton and the other cases would bring about a reversal of this conviction by said Court. This is especially true because the State was armed with ample evidence outside of the confession of the principal to show the principal's guilt, as is shown in the original opinion.

Having so concluded, I must join in the order of this Court overruling the State's motion for rehearing.

BELCHER, Judge (concurring).

I adhere to the holding that the refusal of the trial court to excise the hearsay statements in the principals' confessions implicating the appellant was reversible error on the ground that the limiting charge could not possibly remove the injury and damage caused by such incriminating statements and therefore deprived the appellant of a fair and impartial trial.

DISSENTING OPINION
ON STATE'S MOTION
FOR REHEARING

DICE, Judge.

On appellant's motion for rehearing, the writer voted to reverse the conviction because of the admission in evidence of the principals' confessions without the portions referring to either the appellant or the House of Tobacco having first been excised. At the time, I was of the opinion that appellant's request that such portions be excised should have been granted.

Upon further consideration, I now conclude that the references to appellant and the House of Tobacco were so interwoven with the acts of the principals that to excise them would render the confessions incomplete and fragmentary. For such reason I now join Presiding Judge Woodley, upon the authority cited in his opinion, and dissent to the overruling of the state's motion for rehearing.

Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923, and Washington v. State of Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 cited by appellant in his motion for rehearing, which involve the rights of an accused to confrontation of witnesses and compulsory process under the Sixth Amendment to the Constitution of the United States, are not here controlling.

In Pointer v. State of Texas, supra, testimony of a witness given at an examining trial at which the accused was not represented by counsel was introduced directly against the accused at his trial for the offense charged.

In the instant case, the confessions were not introduced in evidence directly against the appellant to show his guilt as an accomplice but were introduced for the limited purpose of showing guilt of the principals.

Washington v. State of Texas, supra, involved the right of an accused to the testimony of his co-principal in the crime, and is not here applicable.

Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (May 20, 1968), decided by the Supreme Court of the United States after this court's opinion reversing appellant's conviction, is not controlling, because that case involved a joint trial in which the confession of one codefendant which implicated both defendants was introduced in evidence.[1] In Bruton,

---

1. Louvier v. State, 165 Tex.Cr.R. 167, at 170, 305 S.W.2d 574, at 577; 24 Tex.Jur. 2d, Evidence, Sec. 669.

1. The conviction of the codefendant was set aside on the ground that his confession should not have been received in evidence against him. Evans v. United States, 375 F.2d 355 (Eighth Circuit, 1967). The conviction of Bruton, the other defendant, was reversed by the Supreme Court of the United States because of the admission in evidence of the confession despite the trial court's instruction to the jury to disregard it in determining his guilt. Bruton v. United States, supra.

the prosecution was not required to prove the guilt of the codefendant in order to convict the other.

This distinguishes the case from the instant one, where appellant was being tried, alone, as an accomplice and the confessions were introduced not against him but for the limited purpose of proving guilt of the principals—which the state was required to do in order to convict.

The state's motion for rehearing should be granted and the judgment of conviction affirmed.

WOODLEY, P. J., joins in this dissent.